IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2003

## STATE OF TENNESSEE v. CRAIG U. QUEVEDO

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000492      Michael Jones, Judge**

---

**No. M2002-02468-CCA-R3-CD - Filed January 27, 2004**

---

The Defendant, Craig Quevedo, pled guilty to thirty counts of rape and twenty-four counts of incest and pled nolo contendere to two counts of aggravated sexual battery, four counts of rape of a child, nine counts of rape and one count of aggravated rape in the Circuit Court for Montgomery County. After a sentencing hearing, the trial court imposed an aggregate sentence of ninety-two years in prison. On appeal, the Defendant contends that his sentence was excessive and contrary to public policy. Finding no reversible error, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JAMES CURWOOD WITT, JR., J., concurred in the results only.

Merrilyn Feirman, Nashville, Tennessee (on appeal) and Edward DeWerff, Clarksville, Tennessee (at trial) for the appellant, Craig Quevedo.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; David H. Findley, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## Opinion
### I. Facts

The Montgomery County Grand Jury indicted the Defendant, Craig Quevedo, on seventy-nine counts of various child rape, rape, aggravated rape, incest and sexual battery crimes involving his minor step-daughter, J.W.[1]  The Defendant pled guilty to thirty counts of rape and twenty-four counts of incest and pled nolo contendere to two counts of aggravated sexual battery, four counts of rape of a child, nine counts of rape and one count of aggravated rape in the Circuit Court for

---

[1]It is the policy of this Court to use initials of a child rape victim rather than the victim's name.

Montgomery County. After a sentencing hearing, the trial court imposed the following sentences: forty-two years for the child rape convictions; eighteen years for the aggravated sexual battery convictions to be served concurrently with the sentences for child rape; twenty-four years for the rape convictions to be served consecutively to the sentences for child rape; twenty years for the aggravated rape conviction to be served consecutively to the sentences for rape; and six years for the incest convictions to be served consecutively to the sentence for aggravated rape, for an aggregate sentence of ninety-two years in prison. The Defendant now appeals the sentence imposed by the trial court.

## A. Guilty Plea Proceeding

At the guilty plea proceeding, the State introduced the Defendant's thirty-three page journal that was encrypted on his computer. In his journal, the Defendant detailed his extensive history of molesting and raping his minor step-daughter, including the Defendant's tactics of coercing the victim by abusing his position of parental authority and drugging the victim with the "date rape" drug, GHB.[2] According to the Defendant's journal, the Defendant began having sexual relations with the victim when she was twelve years old and continued abusing her for four years. The State read excerpts from the journal that corresponded to each of the seventy counts in the indictment of which the Defendant was pleading guilty or nolo contendere, and the Defendant either admitted his guilt or agreed that the State could offer proof from which a jury could convict him.

## B. Sentencing Hearing

At the sentencing hearing, the State introduced the pre-sentence report, victim impact statements from the victim and other family members, and the Defendant's journal. According to the pre-sentence report, the Defendant graduated from high school and had no prior criminal history. In the victim's impact statement, the victim stated that the Defendant "used his role of authority to control me. He has stolen my youth and my innocence. Each day that passes I am reminded in some way of the things that he has done to me." The victim stated that the Defendant "would make it a point that no one [in her family] was going to be happy" unless the victim satisfied the Defendant's sexual desires. She explained, "It was only a few, brief, awful moments a day that I had to give myself to him and then the rest of the day would be peaceful for everyone." The victim stated that she lives in constant fear from the years of abuse by the Defendant. She stated that she keeps her feelings "bottled up for days at a time and then I am flooded by fits of rage, sorrow, and fear." The victim stated that "[n]o one deserves the torture I was subjected to. It is a disease that he has. An incurable disease. When he decides what he wants he goes to great lengths to make sure that he gets it. His are the only feelings he is concerned with."

The Defendant called the victim to testify at his sentencing hearing. The victim testified that she continued to have frequent nightmares of the Defendant abusing her and that she had seen a professional counselor about the abuse she suffered. The victim explained that she had episodes of

---

[2]Gamma hydroxybutyrate.

rage and that she experienced flashbacks of the abuse every day. When asked whether the Defendant ever told her that he wanted to stop abusing her, the victim replied, "He said he wanted to but he couldn't."

Kelly Christine Benick, the Defendant's sister, testified that she loved the Defendant "very much," even after he confessed to abusing the victim. Benick stated that the Defendant's abuse of the victim was "[t]otally out of character" for the Defendant. She explained that the Defendant was "a very intelligent, very nice man." Benick testified that her older sister was molested by her father as a child. She denied that her father's molestation of her sister somehow caused the Defendant to molest the victim.

The Defendant made the following statement to the trial court:

> This has been a very difficult situation. It was never my intention to drag it out this long. I wanted to save everyone, especially the victim, . . . anymore grief than what she's already gone through.
>
> . . . .
>
> I've had a lot to think about in the last two and a half years. . . . I made a mistake, and it was not [my] intention to harm anyone; however, I know people were harmed.
>
> It wasn't premeditated; it wasn't planned out; . . . it happened. And I regret it. I wish I could undo it. And I am truly sorry that I hurt so many people. I caused myself a great deal of grief, but I caused them even more grief. . . . I too have difficulty dealing with it. A lot of guilt.
>
> . . . .
>
> And I'd just like to tell them I'm sorry. I mean, I don't know what more I can say to that except that I hope that one day you will forgive me. . . .

Following this proof at the sentencing hearing, the trial court found that the following mitigating factors applied to the Defendant's case under Tennessee Code Annotated section 40-35-113 (1997 & Supp. 2002): "(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury; . . . (13) Any other factor consistent with the purposes of this chapter." The trial court explained:

> There has been reference to going to the emergency room, but there's been no determination that . . . criminal conduct caused or threatened serious bodily injury. It may have, but I don't have the evidence to consider it. So, I would find that mitigating factor number one would apply to all offenses; however, it would have

very little weight based on the multitude of conduct in this situation.

[Factor] Number 13 is that he did in fact enter pleas to this case. That has some weight with the Court. It would have had more weight, however, had he pleaded guilty rather than no contest. I do not find any other mitigating factors that apply to any of the offenses.

The trial court then found that the following enhancement factors applied to the Defendant's case under Tennessee Code Annotated section 40-35-114 (1997 & Supp. 2002):

(2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; . . .
(5) A victim of the offense was particularly vulnerable because of age or physical or mental disability . . .
(8) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; . . . and
(16) The defendant abused a position of public or private trust . . . .

The trial court also found that several of the Defendant's multiple convictions should run consecutively to each other under Tennessee Code Annotated section 40-35-115(b)(5) (1997 & Supp. 2002) because the Defendant was convicted of two or more statutory offenses involving sexual abuse of a minor "with consideration of the aggravating circumstances arising from the relationship between the [D]efendant and victim . . ., the time span of [D]efendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim . . . ."

## II. Analysis

On appeal, the Defendant contends that the sentence imposed by the trial court was excessive and contrary to public policy because the trial court failed to consider as a mitigating factor that the Defendant grew up in a home where his father sexually abused his sister. In his appellate brief, the Defendant contends the following:

[The Defendant] was raised in a home where his father sexually abused his sister. This mitigating factor was not specifically addressed at the sentencing hearing. However, it is clear from [the Defendant's] journal and his sister's testimony, that the abuse was never appropriately addressed by the family. As was made clear by his sister's testimony, this abuse of another sister was perceived by the family as being the fault of the sister who suffered the abuse. Undoubtedly, being raised in that environment had a disastrous influence on [the Defendant].

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations

-4-

made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Commission Cmts.

Tennessee Code Annotated section 40-35-103(1) (2003) states that:

Sentences involving confinement should be based on the following considerations:
(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). The trial court may consider enhancement and mitigating factors when determining a defendant's sentence. See Tenn. Code Ann. §§ 40-35-113, -114 (2003). Moreover, if a defendant is convicted of more than one criminal offense, the trial court may order the sentences to run consecutively if the court finds by a preponderance of the evidence that certain criteria are met. See Tenn. Code Ann. § 40-35-115(b)(1)-(7) (2003).

In the case under submission, the Defendant "concedes that the aggravating factors applied were appropriate." However, the Defendant contends that the trial court erred in sentencing him because it failed to consider as a mitigating factor that the Defendant grew up in a home where his father sexually abused his sister. The Defendant also contends that the Defendant's aggregate sentence of ninety-two years is contrary to public policy because it "requires that [the Defendant] die in prison." The trial court applied mitigating factors based upon the following determinations: (1)

the Defendant's actions neither caused nor threatened serious bodily injury; and (2) the Defendant pled guilty or nolo contendere, negating the need for a protracted trial. The trial court applied the following enhancement factors: (1) the Defendant had a history of criminal behavior based upon the finding that, except for the first act of sexual abuse, there was prior criminal sexual conduct preceding each episode of sexual abuse; (2) the victim was vulnerable because of her age; (3) the Defendant committed the multiple offenses to gratify his desire for pleasure or excitement based upon the Defendant's graphic journal entries detailing the pleasure and excitement he got from abusing the victim; and (4) the Defendant abused a position of private trust based upon the Defendant's numerous journal entries detailing how he coerced the victim into complying with the sexual abuse for four years.

Based upon our de novo review of the sentencing hearing, the pre-sentence report and the evidence presented at the sentencing hearing, we conclude that the trial court properly applied the above listed enhancement and mitigating factors when determining the Defendant's aggregate sentence. The Defendant presented no evidence at the sentencing hearing regarding what effect his older sister's alleged sexual abuse by his father had on the Defendant and whether witnessing such abuse as a child caused him to abuse the victim in this case. Indeed, the Defendant only stated that he was sorry that he abused the victim and wished that everyone would forgive him some day. Further, Benick, the Defendant's younger sister, denied that this alleged abuse caused the Defendant's abusive behavior in this case. In addition, the Defendant did not argue to the trial court that the alleged sexual abuse of his sister by his father should be a mitigating factor. Therefore, we conclude that the trial court did not err by not considering the alleged sexual abuse of the Defendant's sister as a mitigating factor in this case.

We further conclude that the Defendant's aggregate sentence of ninety-two years in prison is not contrary to public policy. The Defendant pled guilty or nolo contendere to seventy counts of sexual crimes against a minor. The Defendant's journal recounts in graphic detail what the Defendant did to the victim over a four-year period, starting when the victim was twelve years old. The Defendant's journal reveals that he used his parental position to coerce the victim into performing sexual acts and that he ultimately used GHB to incapacitate and rape the victim. The victim testified that she continues to have nightmares about the long period of abuse and has fits of "rage, sorrow and fear." Moreover, an extended period of confinement is justified in this case to protect society and provide an effective deterrence to others likely to commit similar offenses.

### III. Conclusion

Based upon our de novo review, we conclude that the trial court did not err in sentencing the Defendant. Therefore, we AFFIRM the trial court's judgments.

 

 

_____
ROBERT W. WEDEMEYER, JUDGE